ANNIE BEN COULTER v. CAPITOL FINANCE COMPANY, ORIGINAL DEFENDANT, AND EASTERN FINANCE COMPANY, OF BURLINGTON, INC., AND CMC FINANCE GROUP, INC., ADDITIONAL DEFENDANTS.

(Filed 14 January, 1966.)

**1. Landlord and Tenant § 11—**

When a tenant holds over after the expiration of a term of years, nothing else appearing, the lessor may treat him as a trespasser and eject him, or he may continue to recognize him as a tenant under the terms of the expired lease, except that the tenancy is one from year to year and terminable by either party upon 30 days' notice prior to the end of the yearly term.

**2. Landlord and Tenant § 10—    Lessor may waive notice of exercise of option for extended term.**

Where a lease for a term of years provides for an extension at an increased monthly rental upon notice to lessor 30 days prior to the end of the term, the provision for notice is for the benefit of lessor, and where the lessee remains in possession after the end of the term and pays the increased monthly rental, which is accepted by lessor, the provision for notice is waived and both parties are bound by the extension agreement. A subsequent provision that if lessee should remain in possession, resulting in a tenancy from month to month, the lease might be terminated by either party upon thirty days' notice, does not alter this result, since the subsequent provision was intended to apply only upon a holding over under the terms of the original lease.

**3. Landlord and Tenant § 5—**

Where a lease is prepared by lessee, ambiguous language must be construed in favor of lessor.

**4. Landlord and Tenant § 8—**

The assignment of a lease does not release lessee of its contractual obligation to pay rent, even though the lessor consents to the assignment and accepts rental payment from the assignee.

APPEAL by plaintiff from *Gambill, J.,* 29 March 1965 Civil Session of GUILFORD.

This is an action for damages for breach of a lease, which was heard by the court, without a jury, upon an agreed statement of facts. The facts material to this appeal are as follows:

The plaintiff, owner in fee simple of the leased premises, entered into a lease agreement with the defendant Eastern Finance Company of Burlington, Inc. (hereinafter called Eastern). The lease was prepared by the attorney for Eastern.

The lease was for an original term of 36 months, beginning 1 June 1959 and continuing through 31 May 1962, for which the lessee agreed to pay a total rent of $6,300, payable $175.00 per month, in advance, on the first day of each month. It stated that all notices required to be given must be in writing and sent by registered mail. It then provided:

"V. It is further understood and agreed between the parties hereto that at the expiration of the original term of this lease, the Lessee shall have the option of extending this lease for an additional period of two years. The rental consideration for this additional period of two years to be TWO HUNDRED AND TWENTY-FIVE DOLLARS ($225.00) per month, payable in advance on the same day as the rent is due and payable under the terms of this original lease. The Lessee agrees to notify the Lessors as provided in Paragraph IV of this lease thirty (30) days before the termination of the original term of this lease of its intention to exercise the option herein granted.

"VI. Should the Lessee remain in possession of the leased premises beyond the expiration of the original term or any renewal or extension of this lease, which shall result in a tenancy from month to month, this lease may be terminated by either party upon the giving of thirty (30) days' written notice to the other party."

Eastern entered into possession of the leased premises and paid the agreed rent of $175.00 per month throughout the original term of three years. Thereafter Eastern continued in possession of the premises and paid rent at the rate of $225.00 per month for the months of June and July 1962, these payments being accepted by the plaintiff-lessor.

On 3 July 1962, Eastern transferred all of its assets, including this lease, to its parent corporation, which is not a party to this suit. Rent at the rate of $225.00 per month was paid to and accepted by the plaintiff for the months of August and September 1962, it not appearing whether this payment was by Eastern or by its parent-assignee.

On or about 10 October 1962, the defendant CMC Finance Group, Inc. (hereinafter called CMC) purchased from the parent-assignee of Eastern certain properties, including this lease. This agreement, to which the plaintiff was not a party and to which it does not appear that she assented, stated that the parent of Eastern would transfer to CMC, among other things, "the seller's month to month leasehold of the business premises occupied by it in Burlington, North Carolina," these being the premises described in the plaintiff's lease to Eastern.

Capitol Finance Company (hereinafter called Capitol) is a wholly owned subsidiary of CMC. Following the agreement between the parent-assignee of Eastern and CMC, CMC and Capitol entered into possession of the leased premises and paid rent to the plaintiff-lessor at the rate of $225.00 per month for the months of October and November 1962.

The check for the November 1962 rent was transmitted to the plaintiff in a letter from CMC dated November 1, but mailed November 5, 1962, which letter stated:

"Please be advised that we are giving 30 days' notice from date of this letter at which time we wish to terminate the rental of the above offices, and will vacate all of our office fixtures from the premises."

On 20 November 1962, the plaintiff, through her attorneys, wrote CMC and Capitol, acknowledging receipt of the above letter and stating, in reply, that the original lease had been renewed for a period of two years and denying the right of CMC and Capitol to terminate it. CMC and Capitol, nevertheless, vacated the premises and refused to pay any rent after November 1962.

The plaintiff thereafter used diligent effort to obtain another tenant for the premises, but except for temporary use, was unable to rent them. On 30 April 1964, plaintiff sold the premises. If plaintiff is entitled to recover, she is entitled to recover $3,979.50.

Upon the facts so stipulated the court reached conclusions of law, which may be summarized as follows:

1. Eastern by reason of its not having given notice of its intent to do so, in accordance with the provisions of the lease, did not exercise its option to extend the term for an additional two years.

2. By remaining in possession and paying rent at the rate of $225.00 per month for the months of June to October 1962, inclusive, Eastern, its parent-assignee, CMC, and Capitol were tenants from month to month so that the lease could be terminated by either party upon the giving of 30 days' written notice.

3. CMC and Capitol, by giving plaintiff notice by the letter dated 1 November 1962, of their intent to vacate the premises, terminated the lease and no rent became due the plaintiff after the month of November 1962.

4. CMC and Capitol were assignees of the rights of Eastern under the lease and were obligated to the same extent as Eastern thereunder.

The court accordingly entered judgment that the plaintiff recover nothing of the defendants and pay the costs of the action. From this judgment the plaintiff appeals, assigning as error the first three of the above conclusions by the court and its action in signing the judgment.

*Wharton, Ivey & Wharton for plaintiff appellant.*
*Forman, Zuckerman & Scheer and Harry Rockwell for defendant appellees.*

LAKE, J. Nothing else appearing, when a tenant for a fixed term of one year or more holds over after the expiration of such term, the lessor has an election. He may treat him as a trespasser and bring an action to evict him and to recover reasonable compensation for the use of the property, or he may recognize him as still a tenant, having the same rights and duties as under the original lease, except that the tenancy is one from year to year and is terminable by either party upon giving to the other 30 days' notice directed to the end of any year of such new tenancy. *Kearney v. Hare,* 265 N.C. 570, 144 S.E. 2d 636; *Duke v. Davenport,* 240 N.C. 652, 83 S.E. 2d 668; *Murrill v. Palmer,* 164 N.C. 50, 80 S.E. 55; *Harty v. Harris,* 120 N.C. 408, 27 S.E. 90.

The parties to the lease may, of course, agree upon a different relationship. Here, they have done so. Paragraph V of the lease gives the lessee the option to extend the lease for an additional term of two years, the rent during such additional term to be $225.00 per month instead of the $175.00 payable during the original term. This paragraph also provides that the lessee agrees to notify the lessor, in writing by registered mail, 30 days before the end of the original term, of its intention to exercise such option. We construe this pro-

vision for notice to be a condition precedent to the right of the lessee so to extend the term. Otherwise, the so-called agreement would have no meaningful purpose.

Nothing else appearing, a holding over by the lessee, without giving such notice, would not prevent the lessor from treating the lessee as a trespasser following the expiration of the original term and suing immediately to evict. *Realty Co. v. Demetrelis*, 213 N.C. 52, 194 S.E. 897; *Oil Co. v. Mecklenburg County*, 212 N.C. 642, 194 S.E. 114; *Holton v. Andrews*, 151 N.C. 340, 66 S.E. 212. However, this provision for notice is for the benefit of the lessor and may be waived by him. *Kearney v. Hare, supra;* 32 Am. Jur., Landlord and Tenant, § 980; 51 C.J.S., Landlord and Tenant, §§ 127, 145, 149. See also: *Oil Co. v. Mecklenburg County, supra; Holton v. Andrews, supra.* When a tenant, having the right to extend, holds over, he is presumed to do so with the intent of exercising the right to extend. *Kearney v. Hare, supra; Trust Co. v. Frazelle, 226* N.C. 724, 40 S.E. 2d 367; 32 Am. Jur., Landlord and Tenant, § 982. When such a lessee remains in possession without giving the prescribed notice, the lessor has an election to treat him as a trespasser or to waive the notice and treat him as holding by virtue of an extension of the lease. Acceptance by the lessor of the rent which the lease provides shall be paid during the extended term is a waiver of such notice by the lessor, nothing else appearing. 32 Am. Jur., Landlord and Tenant, § 980; Anno: 27 A.L.R. 981, 993. This is especially true where, as here, the lease provides that, in event of an extension of the term, the rent shall be increased. *Long v. Stafford*, 103 N.Y. 274, 8 N.E. 522; Anno: 27 A.L.R. 981, 995.

In 32 Am. Jur., Landlord and Tenant, § 982, the rule is correctly stated as follows:

"[I]f the lease provides for an additional term at an increased rental, and after the expiration of the lease the tenant holds over and pays the increased rental, this is affirmative evidence on his part that he has exercised the option to take the lease for an additional term; but where, under such a lease, the tenant holds over after the expiration of the original term and does not pay the increased rental as provided by the lease, but continues to pay the original rental, which is accepted by the lessor, this negatives the idea of the acceptance of the privilege of an additional term."

Here, the lease provided for an increase of the rent, from $175.00 per month to $225.00 per month, if the lessee exercised its right to extend the term for two additional years. The lessee held over. Rent, at the rate of $225.00 per month, was paid and accepted with-

out comment. This clearly indicates an intent on the part of the lessee to exercise its option to extend the term for two additional years and a similar intent on the part of the lessor to waive the notice to which she was entitled.

The defendants contend that Paragraph VI of the lease leads to a different conclusion. This paragraph provides:

"Should the Lessee remain in possession of the leased premises beyond the expiration of the original term or any renewal or extension of this lease, which shall result in a tenancy from month to month, this lease may be terminated by either party upon the giving of thirty (30) days' written notice to the other party."

This provision is ambiguous. Construed literally, it would apply whenever the lessee remained in possession beyond the expiration of the original term, even though the lessee had given notice, pursuant to Paragraph V, of its intent to extend the term for two years. It does not seem likely that this is what the parties had in mind. Nor does it seem reasonable to construe this Paragraph VI to mean that the lessee, by remaining in possession beyond the expiration of the original term, without giving notice of any intent to exercise its option could thereby compel the lessor to recognize the continuance of the landlord-tenant relationship for at least another month. A reasonable construction of Paragraph VI would seem to be that it is intended to apply only where there is (1) no exercise of the option to extend under Paragraph V, (2) a holding over by the lessee and (3) an election by the lessor to treat the lessee otherwise than as a trespasser subject to immediate eviction.

Without Paragraph VI such a combination of circumstances would create a tenancy from year to year. *Williams v. King,* 247 N.C. 581, 101 S.E. 2d 308; *Murrill v. Palmer, supra; Harty v. Harris, supra.* The purpose of Paragraph VI seems to have been to provide that in such circumstances the tenancy would be from month to month, and so terminable by either party at the end of any month, but only upon 30 days' notice rather than upon the seven days' notice, which would otherwise be sufficient to terminate a month to month tenancy under G.S. 42-14.

In the event of a month to month tenancy, pursuant to Paragraph VI, the rent would be $175.00 per month, not $225.00 per month, since the only provision for the increased rental is in Paragraph V and relates to the extension for two years. The payment and acceptance of the higher rent is consistent only with the establishment of an extended term of two years beginning with the expiration of the original term.

Ordinarily, an ambiguous clause in a lease is construed in favor of the lessee. *Kearney v. Hare, supra; Trust Co. v. Frazelle, supra;* 32 Am. Jur., Landlord and Tenant, §§ 128, 962. However, "It is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing." *Realty Co. v. Batson,* 256 N.C. 298, 123 S.E. 2d 744; *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906; *Wilkie v. Insurance Co.,* 146 N.C. 513, 60 S.E. 427. Here, the lease was prepared by the attorney for the lessee. Consequently, the ambiguous language in Paragraph VI should be construed in favor of the lessor.

When Eastern, the original lessee, held over after the expiration of its three year term, paying rent at the rate which was to apply only if it exercised its option to extend the term for two additional years, and the lessor accepted this payment, the extension of the lease was effected and the conditions to which Paragraph VI was to apply never came into being. Both lessor and lessee were then bound for the two year term.

Thereafter, Eastern assigned the lease to its parent corporation which reassigned it to CMC. CMC and Capitol, the wholly owned subsidiary of CMC, entered into possession of the leased premises and paid the agreed rent to the lessor. The assignment of a lease does not release the lessee from its contractual obligation to pay rent even though the lessor consents to the assignment and accepts rental payments from the assignee. *Williams v. King, supra; Bank v. Bloomfield,* 246 N.C. 492, 98 S.E. 2d 865; 32 Am. Jur., Landlord and Tenant, §§ 356, 358, 360. The assignee is also liable for rent accruing after the assignment takes effect. The lessor may sue either the lessee or the assignee, or both, although he can, of course, have but one satisfaction. 32 Am. Jur., Landlord and Tenant, § 374. The abandonment of the lease by the assignee does not relieve the assignee from liability for rent for the remainder of the term. 32 Am. Jur., Landlord and Tenant, § 380.

The lease having been extended for two additional years, as provided in Paragraph V, the lessor is entitled to recover from all of the defendants her damages resulting from their breach of the lease agreement, the amount of which damages is stipulated to be $3,979.50.

The court below erred in its conclusions of law Nos. 1, 2 and 3. Its judgment must, therefore, be reversed and the cause remanded to the superior court for the entry of a judgment in favor of the plaintiff in accordance with this opinion.

Reversed and remanded.